United States District Court
Middle District of Florida
Jacksonville Division

**MICHAEL MISTARZ,**

    **Plaintiff,**

v.                                                 **NO. 3:21-cv-466-TJC-LLL**

**RELIANCE STANDARD LIFE
INSURANCE COMPANY,**

    **Defendant.**
_____

### Report and Recommendation

Plaintiff Michael Mistarz (Mistarz) sues defendant Reliance Standard Life Insurance Company (Reliance) under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* (ERISA) alleging his claim for long-term disability benefits was wrongfully denied. Doc. 1. Before the Court are Plaintiff's Dispositive Motion for Summary Judgment, doc. 21, and Defendant's Motion for Summary Judgment and Supporting Memorandum of Law, doc. 22; both parties filed responses in opposition, docs. 26 and 27, and additional briefing as ordered by the Court, docs. 29, 30, and 31-1. The parties agree that an arbitrary and capricious standard of review applies (docs. 21 at 14; 22 at 9) and request the Court enter judgment based on the filings with no further proceedings. These motions were referred to me for the issuance of a report and recommendation regarding the appropriate resolution. After review, I

1

respectfully recommend plaintiff's motion, doc. 21, be granted, defendant's motion, doc. 22, be denied, and that the case be remanded to defendant.

## I.     The Plan

The undisputed facts outlined below are taken from the parties' filings and portions of the administrative record filed by Reliance.[1] Mistarz was employed at Biogen as a biochemist until January 2018 and participated in a long-term disability insurance policy (the plan) issued to Biogen by Reliance, the plan administrator. Docs. 1 at 2; 21 at 2; 22 at 2. Reliance was also obligated to pay benefits owed under the plan, docs. 1 at ¶ 6; 21 at 20-21; 22 at 11. The plan provides for a monthly benefit to be paid to eligible participants upon a showing of total disability. "Total disability" means that, as a result of a sickness or injury during an "elimination period"[2] and for the first 24 months for which a monthly benefit is payable, an insured cannot perform the material duties of his or her "regular occupation." Administrative Record, doc. 22-1 at 12.[3] After a monthly benefit has been paid for 24 months, the definition of total disability changes to mean that the insured continues to receive the benefit if he or she cannot perform the material duties of "any occupation," as opposed to his or her regular occupation. *Id*. An insured's "regular occupation" is the occupation he or she

---

[1] Reliance filed portions of the administrative record in support of its motion, doc. 22-1.

[2] The plan does not pay monthly benefits until the expiration of the elimination period, defined as "180 consecutive days of Total Disability." Doc. 22-1 at 9, 11.

[3] For ease of reading, I refer to the administrative record under the docket entry in which it was filed in CM/ECF, doc. 22-1, with the page number citations as assigned in CM/ECF.

was routinely performing when the total disability began, and "any occupation" refers to "an occupation normally performed in the national economy for which an [i]nsured is reasonably suited based on his/her education, training[,] or experience." *Id.* at 11-12; *see also* docs. 21 at 2-3; 22 at ¶ 15.

The monthly benefit amount is decreased if an insured receives other income, including disability benefits under the Social Security Act. Docs. 21 at 3; 22-1 at 21. Further, the plan states that monthly benefits for a total disability "caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months" unless the insured is in a hospital or institution at the end of the 24-month period. Doc. 22-1 at 25. As noted above, the parties agree the Court's analysis is governed by an arbitrary and capricious standard of review because the plan grants discretion to Reliance in interpreting the plan and determining eligibility for benefits. Docs. 21 at 3; 22 at 9; 22-1 at 16.

## II. Background and Administrative Record

The relevant opinions from Mistarz's treating physicians are numerous and summarized below. Mistarz stopped working as a biochemist on January 10, 2018, and claimed disability effective January 11, 2018. Docs. 21 at 2; 22 at 3; 22-1 at 73. On January 17, 2018, Kim Isaacs, M.D., a specialist in gastroenterology, concluded that the factors preventing Mistarz from working were "malaise, abdominal pain, diarrhea, lightheadedness, facial flushing, short term memory disturbances," and anxiety due to those symptoms. Doc. 22-1 at 68-70. Dr. Isaacs opined Mistarz could return to work

in approximately 12 weeks, noting a potential return date of April 5, 2018.[4] *Id.* at 69. On May 14, 2018, a nurse from Reliance's clinical staff opined that "[l]ack of consistent work function is supported from the date of loss [Jan. 11, 2018] and [is] ongoing due to multiple symptoms with unknown etiology." Docs. 22 at ¶ 10; 22-1 at 37. Mistarz's records show he was treated for abdominal issues, facial flushing, lightheadedness, wheezing, dizziness, and a rapid heartbeat, among other issues. Doc. 22-1 at 37. His primary diagnosis was Crohn's disease of the large intestine. *Id.*

In a letter dated May 31, 2018, Reliance indicated that Mistarz met the plan's definition of "total disability" as of January 11, 2018, and that he would start receiving monthly benefits after the elimination period, which expired on July 10, 2018. Docs. 21 at 4; 22 at 4; 22-1 at 48. The letter also stated that, for Mistarz to be eligible for long-term disability benefits beyond 24 months, he must be totally disabled from performing the material duties of any occupation and that, before the end of the 24-month period set to expire on July 10, 2020, an investigation would begin to determine his continued eligibility for benefits under the "any occupation" definition. Doc. 22-1 at 49.

During the 24-month period that Mistarz received benefits based upon the "regular occupation" definition of total disability, Reliance's staff continued to review his medical records. Doc. 22 at ¶ 16. In May 2018, Samantha Lin, M.D., a specialist

---

[4] Dr. Isaacs wrote "April 5, 2017" on her form; this was likely a clerical error, however, given that the form was completed on January 17, 2018. Because Dr. Isaacs also indicated a potential return date of "12 weeks," it appears from the context she meant April 5, 2018. *See* doc. 22-1 at 69.

4

in allergy and immunology, opined that Mistarz's primary diagnosis was dysautonomia.[5] *Id*. at ¶ 18; doc. 22-1 at 92, 141. When asked what symptoms she observed that would preclude Mistarz from working, Dr. Lin indicated she had not directly observed any, but that his treating cardiologist noted an unstable heart rate and blood pressure instability. Doc. 22-1 at 92. When asked when Mistarz may be able to return to any occupation, Dr. Lin stated that 1) it was dependent upon the exertion level and 2) Mistarz's cardiologist and/or gastroenterologist would need to be consulted because she did not believe his diagnoses were allergy related. *Id*. at 92, 141.

Also in May 2018, Dr. Isaacs issued a second letter, indicating Mistarz was unable to carry out a full eight hours of work due to "pain, diarrhea, and lightheadedness" and that although he made no significant improvement since his disability started, she believed it was likely that he would be able to return to work at some point in the future. *Id*. at 135. Thomas Wall, M.D., a specialist in cardiology, found Mistarz's primary diagnosis was dizziness with a concurrent condition of a "[d]ysautonomia-like disorder." *Id*. at 139. Dr. Wall opined Mistarz was able to work, both at his usual work and any gainful occupation, immediately. *Id*. In November 2018, Cassandra Israel, M.D., opined that Mistarz was able to work at a "Very Heavy Lift" exertional level. *Id*. at 149-50.

---

[5] Dysautonomia is a medical condition characterized by problems with the autonomic nervous system, which controls involuntary body functions such as heartbeat, breathing, and digestion. *See Dysautonomia: Symptoms, Causes, Types, & How to Live With (clevelandclinic.org)*, https://my.clevelandclinic.org/health/diseases/6004-dysautonomia (last visited January 26, 2023).

5

In April 2019, Michael A. Norcero, Jr., M.D., a specialist in cardiovascular medicine, performed an independent medical examination of Mistarz and concluded that he had primary diagnoses of Crohn's disease in remission, dysautonomia, and hyperadrenergic POTS (postural orthostatic tachycardia syndrome) with a secondary diagnosis of mast cell activation syndrome. *Id*. at 165-66. Dr. Norcero opined Mistarz could work at a sedentary exertional level. *Id*. at 167-68.

Mistarz completed an "Activities of Daily Living Questionnaire" in November 2019 where he stated that his condition was caused by a central sensitization syndrome and his body was "unable to sustain physical and mental stresses due to damage to [his] central nervous system caused by Crohn's disease." Docs. 21 at 6; 22-1 at 173-82.[6]

In February 2020, Reliance sent Mistarz a letter indicating he was no longer entitled to disability benefits because it had determined that he retained the ability to perform the material duties of his regular occupation. Doc. 22-1 at 50-51.

In March 2020, Ali Homayuni, M.D., completed a peer review of Mistarz's medical records. *Id*. at 393-97. Dr. Homayuni stated the symptoms impacting Mistarz were lightheadedness, dizziness, fatigue, and diarrhea, and that, as of February 10, 2020, he "should be able to perform light functions lifting up to 20 pounds occasionally and involv[ing] occasional periods of walking and standing." *Id*. at 395-96.

---

[6] Around this same time, Mistarz treated at the Mayo Clinic; records show that a colonoscopy performed on December 17, 2019 was "essentially normal." Doc. 22-1 at 237.

Reliance then requested a Residual Employability Analysis (REA) to be completed by its vocational staff. Docs. 22 at ¶ 29; 22-1 at 408-409. In that REA, dated April 2, 2020, Mia Zafarino, a vocational rehabilitation specialist with Reliance, considered Dr. Homayuni's evaluation and opined that there were alternative occupations Mistarz could perform, including a research assistant II, research associate, and quality-control coordinator, all of which were classified at a sedentary exertional level. Docs. 22 at ¶ 29; 22-1 at 409. Ms. Zafarino did not specifically opine on whether Mistarz could perform his regular occupation as a biochemist. *See* doc. 22-1 at 408-409.

In April 2020, Reliance issued another letter to Mistarz—amending its February 21, 2020 letter—stating that he was no longer eligible to receive benefits because he could perform the three alternative occupations identified by Ms. Zafarino in her April 2, 2020 REA and, thus, Mistarz no longer met the "any occupation" definition of total disability as of July 10, 2020. Docs. 22 at ¶ 30; 22-1 at 56. Reliance stated Mistarz would receive his benefits through July 10, 2020 (24 months after he started receiving benefits on July 10, 2018); in so doing, it implicitly found Mistarz was unable to perform his regular occupation, as required under the "regular occupation" definition of total disability for the first 24 months after the elimination period. *See* docs. 22 at ¶ 30; 22-1 at 54-56. Mistarz appealed the decision denying him benefits after expiration of the 24-month period. Doc. 22-1 at 422.

In August 2020, Venkatachala Mohan, M.D., a specialist in gastroenterology, completed yet another review of Mistarz's records at Reliance's request, where he

7

concluded that Mistarz suffered from dysautomonia, chronic pain syndrome, anxiety, fibromyalgia, Crohn's disease in remission, and irritable bowel syndrome. *Id.* at 424, 428. Dr. Mohan opined Mistarz "ha[d] no impairment of work capability from the GI standpoint" and that he could work full-time on a sedentary basis.[7] *Id.* at 429.

That same month, Mistarz underwent an independent psychiatric medical evaluation with Dr. Audrey Longson, D.O., a board-certified psychiatrist, who opined his symptoms were chronic fatigue, trouble falling asleep, and "ongoing issues with depression and anxiety." *Id.* at 434-35. Dr. Longson also found a "direct relationship between [Mistarz's] pain and his psychiatric symptoms." *Id.* at 435. Dr. Longson reviewed a letter authored by Mistarz's mother regarding her observations of his symptoms, as well as several other records. *Id.* at 439-40. Dr. Longson opined that, while she believed Mistarz was unable to perform his past work, she suspected he may be able to perform another occupation "if several modifications and/or accommodations were made[.]" *Id.* at 444. Further, Dr. Longson found Mistarz was suffering from a psychiatric impairment as of July 10, 2020. *Id.* When asked specifically when Mistarz's psychiatric symptoms contributed to his inability to work, Dr. Longson answered that his "psych symptoms have contributed to his difficulties re-entering the work force since January 18, 2018." *Id.* at 449.

---

[7] A short time after his initial letter, Dr. Mohan authored a supplemental letter after reviewing 341 pages of additional records; he had no changes of opinion from his initial report and noted that, beyond diagnoses of his Crohn's disease and IBS, any other factors affecting Mistarz's functional ability were beyond his scope of review. *Id.* at 431-32.

In September 2020,[8] Ms. Zafarino, Reliance's vocational rehabilitation specialist, prepared an addendum to her April 2, 2020 REA, where she considered the additional opinions of Dr. Mohan and Dr. Longson. *Id*. at 447. Ms. Zafarino concluded that "*none* of the 3 previously identified occupations within the REA profile created on 4/2/2020 would remain viable alternatives for Mr. Mistarz." *Id*. at 448 (emphasis added).

On October 28, 2020, Reliance issued its final administrative denial of benefits. Docs. 21 at 13; 22 at ¶ 41 (both citing doc. 22-1 at 59). In the letter, Reliance relied heavily on Ms. Zafarino's conclusion from the April 2, 2020 REA that Mistarz could perform the three alternative sedentary occupations of research assistant II, research associate, and quality-control coordinator as the basis for its conclusion that he no longer met the "any occupation" definition of total disability and thus was no longer entitled to benefits after July 10, 2020, the end of the "regular occupation" period. Doc. 22-1 at 64-65. Oddly, Reliance's October 28, 2020 letter does not mention the amended September 14, 2020 REA in which Ms. Zafarino concluded that *none* of the occupations she previously identified remained viable alternatives. Moreover, Ms. Zafarino identified no other occupations that Mistarz could perform, effectively concluding there were no viable employment alternatives for him. *Id*. at 59-66, 447-48.

---

[8] Although the letter is dated September 14, 2019, it is apparent from the context that date was in error, considering that the letter discusses Ms. Zafarino's previous REA on April 2, 2020 and indicates the REA review was requested on September 14, 2020. Doc. 22-1 at 447.

9

### III. The Contradiction Between the Parties' Motions and the Evidence

In their initial summary judgment motions, both parties incorrectly represented that Ms. Zafarino ultimately concluded that the employment alternatives identified in her April 2, 2020 REA remained viable options. Doc. 21 at 11 (Regarding the September 14, 2020 REA, Mistarz asserts the "evaluator concluded that . . . the three previously-identified sedentary occupations would remain viable alternatives"); doc. 22 at ¶ 37 (Reliance states that Ms. Zafarino "concluded that the three alternative sedentary occupations previously identified remained viable options"). However, as noted above, the Court read her letter as stating the opposite conclusion and ordered the parties to explain the contradiction and provide additional evidence, if necessary. Order, doc. 28.

In his supplemental brief, Mistarz's counsel explained that he agreed with the Court's reading of the letter—that Ms. Zafarino concluded the three previously identified occupations were no longer viable alternatives for Mistarz (and she did not identify any new occupations that would be)—stating simply that he "misread" it. He then asserted that the correct interpretation of the letter lends additional support to his argument that Reliance's decision was arbitrary and capricious. Doc. 29 at 2. Reliance also filed its supplemental brief, doc. 31-1, in which it does not disagree with the Court's reading of the document, but rather, provides a new explanation for the meaning of Ms. Zafarino's words, as discussed below.

## IV. Legal Authority

ERISA was designed "to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotations and citations omitted). A plan participant or beneficiary may bring a civil action under ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). In his complaint, Mistarz claims he was improperly denied benefits under the plan in violation of § 1132(a)(1)(B). Doc. 1 at 1. He states he has exhausted all administrative remedies and requests judgment against Reliance for "payment of long term disability benefits due and owing under the [p]lan, plus interest, costs, and payment of attorney[']s fees." *Id*. at 3.

Under the Federal Rules of Civil Procedure, summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But when the case involves a denial of benefits under ERISA, "the district court sits more as an appellate tribunal than as a trial court." *Crume v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006) (citations and quotations omitted). Another Court in the Middle District of Florida has explained the tension between the summary judgment standard and the standards of review in ERISA cases this way:

> The summary judgment standard set forth in Federal Rule of Civil Procedure 56 is incongruent with the ERISA standard of review. *Compare* Fed. R. Civ. P.

11

> 56(c) *with Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1138 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008) . . . . [T]he Eleventh Circuit charges the district court with determining *de novo* whether the administrator's decision was wrong, unless discretionary authority was granted by the plan, *Williams,* 373 F.3d at 1138, rather, than whether there are questions of material fact that require trial and whether the parties are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). There may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would.

*Keys v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 493 F. Supp. 3d 1147, 1168 (M.D. Fla. 2020), *appeal dismissed sub nom. Keys v. Bert Bell / Pete Rozelle NFL Players Ret. Plan*, No. 20-14031-GG, 2021 WL 2252144 (11th Cir. May 11, 2021).

The Eleventh Circuit employs a six-step review of an administrator's decision to deny ERISA benefits.

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) (per curiam) (emphasis in original). Under an arbitrary and capricious standard, a Court's review is limited to the administrative record. *Harris v. Lincoln Nat'l Life Ins. Co.*, 42 F.4th 1292, 1296 (11th Cir. 2022) (citation omitted).

As noted above, the parties agree the appropriate standard of review here is arbitrary and capricious. Docs. 21 at 14; 22 at 9, 11. Because the appropriate standard of review is undisputed and thus, "the dispositive question is whether [defendant's] decision was arbitrary and capricious," I forgo a de novo review and begin my analysis at step three. *Prelutzky v. Greater Ga. Life Ins. Co.*, 692 F. App'x 969, 973 (11th Cir. 2017) (per curiam). "A decision to deny benefits is arbitrary and capricious if no reasonable basis exists for the decision." *Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997) (citation omitted).

## V.   Analysis

The relevant question is whether there was a reasonable basis for Reliance's decision to deny Mistarz long-term disability benefits after the "regular occupation"

period ended on July 10, 2020. Reliance's October 28, 2020 final letter denying benefits stated that, although Mistarz received benefits from July 10, 2018 to July 10, 2020 based on its determination that he "was not capable of his prior occupation," doc. 22-1 at 60, he was not entitled to benefits beyond July 10, 2020, after the expiration of the "regular occupation" period. *Id*. at 65. When the definition of total disability changed to mean Mistarz cannot perform the material duties of "any occupation," Reliance determined he was ineligible because "[Mistarz] is physically capable of full-time sedentary work and appropriate sedentary occupations have been identified," specifically referencing the occupations of research assistant II, research associate, and quality-control coordinator, identified by Ms. Zafarino in her April 2, 2020 REA. *Id*.; *see also id.* at 409 (Ms. Zafarino's April 2, 2020 REA).

After reviewing the information contained in the administrative record—specifically Reliance's final letter denying benefits—I find that the identification of alternative occupations Mistarz could perform was an indispensable part of Reliance's overall decision to deny benefits. I also note that Reliance relied upon Ms. Zafarino's REA from April 2020, despite her subsequent and amended REA in which she stated none of these occupations remained viable alternatives. *See, e.g.*, Reliance's motion, doc. 22 at ¶ 37 ("Mia Zafarino . . . concluded that the three alternative sedentary occupations previously identified remained viable options."); doc. 22 at 12 ("a Residual Employability Analysis identified multiple Sedentary occupations that Plaintiff is qualified to perform based on his education and experience."); doc. 22 at 13 ("Reliance Standard's vocational staff identified several alternative, sedentary

14

occupations that Plaintiff is capable of performing"); doc. 22 at 22 ("The vocational staff member concluded that the three previously identified alternative sedentary occupations remained viable."); *see also* Reliance's response in opposition to Mistarz's motion for summary judgment, doc. 26 at 4-5 (Ms. Zafarino "concluded that the three alternative sedentary occupations remained viable options with the recommended limitations"); doc. 26 at 18 (same).

Reliance's supplemental brief that addresses the contradiction from above, doc. 31-1, does not explain the inconsistency, but instead provides a new interpretation of Ms. Zafarino's words. Relying on the portion of the plan which states Mistarz would no longer receive benefits for a total disability that is "caused by or contributed to by mental or nervous disorders" after 24 months, Reliance asserts that "Ms. Zafarino . . . found that [Mistarz] was psychiatrically impaired," but that "from a physical perspective, [Mistarz] has full-time work capabilities."[9] Doc. 31-1 at 1. Thus, because Mistarz would not have been entitled to receive benefits after 24 months due to the psychiatric issues, Reliance claims Ms. Zafarino "confirmed that the three alternative sedentary occupations previously identified by Reliance Standard remained physically viable," notwithstanding her explicit finding to the contrary. *See id*. at 4.

But this reasoning is different from the explanation given to Mistarz in Reliance's letter officially denying his benefits. And now, in light of the discrepancy

---

[9] Although Reliance does not provide a citation for the statements noted above that it attributes to Ms. Zafarino, I presume it intends to rely on the September 14, 2020 REA. *See* doc. 31-1 at 1.

15

between Reliance's statements in its initial pleadings and the language in Ms. Zafarino's conclusions, Reliance now argues that Ms. Zafarino's statements implicitly conclude the three previously identified occupations remain viable alternatives because she relied, in part, on a finding by Dr. Longson that Mistarz was psychiatrically impaired. *See generally id*.

There are two problems with Reliance's argument. First, Ms. Zafarino's unambiguous opinion states the contrary—"that none of the 3 previously identified occupations within the REA profile created on 4/2/20 would remain viable alternatives." Doc. 22-1 at 448. Second, even assuming, *arguendo,* that Reliance is correct that Ms. Zafarino's conclusions mean something different than what she said, Reliance's re-framed explanation regarding her finding still lacks merit. While it is true that Ms. Zafarino referenced Dr. Longson's statement that, "[a]s of 7/10/20 onward, [Mistarz] is psychiatrically impaired," she also referenced other statements from Dr. Longson, specifically in her amendment to the independent medical evaluation, that outline impairments based on both Mistarz's psychiatric *and* physical symptoms. *Id*. at 447-48.

For example, Ms. Zafarino references Dr. Longson's statement that Mistarz would be able to function in a job "if he could tailor his schedule to his unique *physical* and psychiatric needs" and that Mistarz "is limited in his ability to work within a typical 9-5/Mon-Fri schedule by both *physical* and psychiatric symptoms which are relapsing/remitting by nature." *Id*. at 448 (emphasis added). Ms. Zafarino also noted that Dr. Longson found "there are entire days (or hours during a day) when [Mistarz]

16

is in severe pain and/or struggling with other *physical manifestations of* his chronic *medical* illnesses . . . . [o]n those days, the psychiatric symptoms flare up as well." *Id*. (emphasis added). After noting those findings, Ms. Zafarino concluded that "[b]ased upon review of this claim, and the *totality of information* referenced which includes educational/vocational background, [the] previously completed REA, and updated medical opinions (more specifically the Psychiatric IME Amendment completed by Dr. Longson); it is the opinion of this [vocational rehabilitation specialist] that *none* of the 3 previously identified occupations within the REA profile created on 4/2/20 would remain viable alternatives for Mr. Mistarz." *Id*. (emphasis added).

Thus, Ms. Zafarino determined that none of the occupations she previously identified remained viable alternatives based on the statements detailed above, which contain opinions regarding Mistarz's abilities based on both his physical and psychiatric impairments. In its final letter denying benefits, Reliance states that, although it found Mistarz's psychiatric conditions have contributed to his impairments since benefits began, any extension past the 24-month period "can only be based on physical impairment." *Id*. at 63. Because Ms. Zafarino's letter could reasonably be read as finding none of the previously identified occupations remain viable alternatives due to Mistarz's physical impairments, notwithstanding the psychiatric conditions, I do

17

not find a reasonable basis to uphold Reliance's decision based on the plan's limitation regarding mental disorders.[10] *See generally* doc. 31-1.

Reliance implores the Court to make assumptions and findings that are not only absent from Ms. Zafarino's September 14, 2020 REA, but which contradict the conclusions she actually made. Because Reliance's final letter denying benefits simply omits any reference Ms. Zafarino's September 2020 REA, and instead relies heavily on the previous findings from the outdated April 2020 REA, I do not find a reasonable basis to uphold Reliance's decision to deny benefits. Considering the omission, coupled with both parties citing Ms. Zafarino's September 2020 REA for a proposition that is incorrect, it appears this may have been an oversight by all involved. Nevertheless, I find that the proposition that Mistarz could perform alternative occupations forms an essential part of Reliance's ultimate decision to deny benefits. *See* doc. 22-1 at 64-65. And, thus it should remanded.[11]

---

[10] Reliance also concedes in its supplemental brief that, "after a claimant has exhausted benefits for a mental condition, they may still receive benefits if they are totally disabled solely from a physical condition." Doc. 31-1 at 3.

[11] I recognize that the medical evidence, overall, supports Reliance's conclusion that Mistarz was not disabled after expiration of the "regular occupation" period. I am unable to recommend, however, an affirmance of Reliance's decision given the significant discrepancy regarding Ms. Zafarino's conclusions. Thus, I find a remand to Reliance in order to clarify and re-consider Ms. Zafarino's statements is appropriate. *See Keys*, 493 F.Supp.3d at 1177 (noting district courts have considerable discretion in deciding whether remanding the claim to the administrator is appropriate (internal quotation marks and citation omitted)); *Mottert v. Union Sec. Ins. Co.*, No. 8:17-cv-998-T-36AEP, 2018 WL 6447307, at *15 (remanding claim in ERISA action for further consideration of evidence upon finding that defendant insurance company relied on flawed reports, arbitrarily ignored evidence, and cherry-picked findings).

Finally, Mistarz includes a single sentence at the end of his motion where he requests judgment in his favor, as well as "an award of . . . attorney's fees and taxable costs." Doc. 21 at 22. Mistarz does not include an estimate of the amount sought or any memorandum of law regarding an award of attorney's fees. *See generally id*. Thus, I recommend the Court retain jurisdiction for a limited time to allow Mistarz to file a motion for attorney's fees and costs that complies with the Local Rules of the Middle District of Florida.

## Recommendation[12]

I respectfully **recommend**:

1. Plaintiff's Dispositive Motion for Summary Judgment, doc. 21, **be granted** to the extent the Court finds Reliance's decision to deny long-term disability benefits arbitrary and capricious;

2. Reliance's Motion for Summary Judgment and Supporting Memorandum of Law, doc. 22, **be denied**;

3. the Court **remand** the case to Reliance for further evaluation of the evidence and re-consideration of Ms. Zafarino's conclusions. Specifically, Reliance

---

[12] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

shall 1) clarify Ms. Zafarino's conclusions, and the basis for her conclusions, in her second and most recent REA analysis, doc. 22-1 at 448; and 2) based on that, determine if Mistarz is able to perform the duties of "any occupation" as defined in the plan;

4. the **Clerk of Court** be directed to enter **judgment** in favor of Mistarz and against Reliance;

5. the Court **retain jurisdiction** over this matter for a period of 30 days to permit Mistarz to submit a request for attorney's fees and costs in accordance with the bifurcated procedure outlined by Rule 7.01 of the Local Rules of the Middle District of Florida; and

6. the **Clerk of Court** be further directed to terminate any remaining pending motions and deadlines as moot and close the file.

**Entered** in Jacksonville, Florida, on January 30, 2023.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

c:
The Honorable Timothy J. Corrigan, United States District Judge
Thomas M. Farrell, IV, Esquire
Tanya L. Suarez, Esquire